# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No.:  2:24-CR-366 |
| | ) | |
| vs. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| **DANIEL CAVEY** | ) | |

The defendant, Daniel Cavey, by and through his undersigned attorney, offers the following information for the Court's consideration in his request for a downward departure and variance in his case. Specifically, the Defendant requests a sentence of seven years—five years for Counts 1 and 2 to be run concurrent to each other and two years for Count 8 to be run consecutive to the other two.

Whatever sentence the Court imposes, the Defendant requests that all restitution be imposed upon him and not upon his wife and (minimal) co-defendant, Janine Keslar. Additionally, he begs the court to show mercy upon his wife and refrain from incarcerating her due to his own role in asking for her assistance in his crime.

## I.  Argument for Downard Departure

The United States Sentencing Guideline §4A1.3(b) allows for a downward departure if the "defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." The assignment of three criminal history points to Daniel for smuggling a cigarette into a jail leads his criminal history category to substantially over-represent his criminal history.

Daniel was assessed these points for attempting to bring cigarettes into a jail in 2014. PSR ¶76. The sentence imposed, 14.35 months, was run concurrent with the exact same sentence for

1

possession of methamphetamine. PSR ¶75. He also received three criminal history points for that charge. *Id*. Assigning six points to a drug addict who tried to bring cigarettes into the jail raises his criminal history points from 8 to 14 points, placing him in category VI. The court should depart downward three criminal history points, which would place him in a category V. Such a departure moves his guidelines on Counts 1 and 2 from 130-162 to 120-150 months. After adding the mandatory 24 months consecutive for Count 8, the downward departure range becomes 144-174 months.

## II. Argument for a variance.

### A. Drug Addiction fueled Daniel's criminal activity

Daniel Cavey's life has been marred by drug abuse and addiction. A review of his criminal history shows that convictions are all tinged with his battle against drugs. It has been an up and down battle for sure, but he has had long bouts of sobriety. He had no criminal activity until the age of 27. PSR ¶66. After a federal conviction for drug conspiracy in 2003, Daniel served three years in federal prison. PSR ¶69. He was released in 2007 and served his four-year term of supervised release without a violation. *Id*. Daniel describes this time in his life as his best, and he credits his success and sobriety to having a good job as a remodeler. He also maintained healthy relationships with family and friends.

Unfortunately, he started using drugs again around 2013 and served another sentence of incarceration for possession of methamphetamine. PSR ¶74. After his release in 2014, Daniel rebuilt his life again by working and maintaining sobriety. Unfortunately, reconnection with an old friend started him down a path of not only drug abuse, but also his extensive criminal activity in this case.

Around 2018, Michael Grasso reached out to Daniel, who was then living in Florida. Grasso was one of Daniel's co-defendants in his 2003 federal drug conspiracy. See *US v. Rodriguez et al*, 2:03-cr-92. Grasso needed a place to stay, and Daniel wanted to help his friend. When Grasso arrived, he told Daniel about a scheme to defraud Lowes and invited Daniel to join him. At first, Daniel declined, but Grasso kept coming back to stay with Daniel. Grasso, an addict as well, brought drugs with him and always offered to share with Daniel. Unfortunately, Daniel succumbed to using drugs with his old friend. After an injury on the job put him out of work in 2019, Daniel joined Grasso in the fraudulent scheme. Grasso taught Daniel how it worked, and Daniel shared some of his profits with Grasso.

It was a downhill slide, with Daniel making money off the scheme to pay for living expenses and feeding an out-of-control drug habit.

Daniel's drug addiction and association with others who abuse drugs is the most significant driver of his criminal activity. As mentioned above, Daniel considers the time he was under federal supervision as one of his most significant successful times in his life. To that end, he asks the court to reduce his term of imprisonment and increase his term of supervision to achieve a sentence that is sufficient, but not greater than necessary, to achieve the ends of sentencing. Specifically, he recommends that the court could run his three supervised release terms *consecutively* instead of concurrently to ensure his success upon release from prison and to avoid unnecessary costs to incarcerate him. (See PSR ¶143).

B. *Daniel is being held accountable for too much of the loss amount.*

The probation agent attributed all the loss incurred by Lowes in the conspiracy to Daniel. However, Daniel did not benefit from all the proceeds of the conspiracy. Although he helped

Grasso at times, he was not involved in all of Grasso's activity. That is, Grasso and Daniel worked together at times; however, they generally operated independently of each other, despite operating out of the same fraudulent playbook.

In paragraph 28, the probation agent assigned to Daniel all the losses in the schemes that Grasso perpetrated. Although the guidelines allow each conspirator to be held accountable for each other, the truth of this case is that Daniel did not benefit from the majority of the amount listed in that paragraph. When searching Grasso's phone and property, investigators determined that he had received approximately $693,388.79. This amount was added to the amounts held directly attributable to Daniel to a total tune of $1.1 million dollars. A loss amount of this magnitude raises the offense level under the guidelines from 7 to 21. See U.S.S.G. §2B1.1(b)(1)(H) and PSR ¶101.

The Court should consider reducing Daniel's base offense level two levels to more accurately hold him accountable for the amount that he personally benefitted from. In this case, that amount would be $433,297.50 ($1,126,686.29 – 693,388.79). This amount would reduce his total offense level to 25.

With a criminal history category of V (see *supra*), his guideline range on Counts 1 and 2 would be 100-125 months. After adding the mandatory 24 months consecutive for Count 8, the range becomes 124-149 months.

### III.     Conclusion

Daniel has shown that he can do well and live in the community successfully for a significant period. The recommended sentencing range suggested by the guidelines is unnecessarily long. For the reasons articulated above, the Defendant respectfully requests a total

sentence of seven years followed by an appropriate term of supervised release.

                                                       Respectfully submitted,

                                                       /s/ *Cody J. Groeber*
                                                       Cody J. Groeber, Esquire
                                                       Assistant Federal Public Defender
                                                       145 King Street, Suite 325
                                                       Charleston, SC 29401
                                                       Attorney ID# 12186

April 25, 2025